UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6101 CAS (VBKx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | BRANTLEY et al. v. NBC UNIVERSAL, INC., et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine M. Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:        Attorneys Present for Defendants:

Not Present                               Not Present

**Proceedings:**   **(IN CHAMBERS): DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** (filed April 22, 2008)

## I.   INTRODUCTION

Plaintiffs are consumers of television programming. They have brought an antitrust suit against several owners of television channels that are distributed through cable and satellite systems ("programmer defendants") as well as against several owners of cable and satellite systems ("distributor defendants").[1] Plaintiffs voluntarily amended their original complaint with a first amended complaint ("FAC") filed on December 3, 2007. The FAC alleged that the programmer and distributor defendants conspired to effectuate a scheme by which "the collective conduct of defendants . . . eliminated, in material part, competition among and between (1) the content providers and/or programmers for cable/satellite television distribution and (2) the cable and satellite providers by the practice of offering only prepackaged tiers of bundled programs and refusing to offer cable programming to consumers on an 'a la carte' basis." (FAC ¶ 1). Plaintiffs alleged that "[i]n part to avoid competing with each other and in part to extract premium prices, the programmer defendants, knowing that each operates in the same fashion, only offer to sell and/or license programming to cable and satellite providers on a 'bundled' basis. In turn, the cable and satellite providers, to avoid competitive pressures and to maximize revenues and profits, offer to consumers only prepackaged bundled tiers and have refused to offer cable and satellite channels to consumers on an 'a

---

[1] The programmer defendants are NBC Universal, Inc., Viacom, Inc., The Walt Disney Company, Fox Entertainment Group, Inc., and Time Warner, Inc. The distributor defendants are Time Warner Cable, Inc., Comcast Corporation, Coxcom, Inc., The DirecTV Group, Inc., Echostar Satellite L.L.C., Charter Communications, Inc., and Cablevision Systems Corporation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6101 CAS (VBKx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | BRANTLEY et al. v. NBC UNIVERSAL, INC., et al. | | |

la carte' or individual choice basis." (FAC ¶ 4.)

  The programmer and distributor defendants moved to dismiss the FAC. On March 10, 2008, the Court granted the motion to dismiss finding that the plaintiffs had adequately alleged standing but had not properly alleged harm to competition. Significant to the Court's ruling were the absence of allegations of market power and the absence of any allegations of competitive injury other than the "forced" purchase of bundled programming when consumers would rather purchase channels on an a la carte basis.

  On March 20, 2008, plaintiffs filed their second amended complaint ("SAC"), which substantially alters the allegations in the complaint. The SAC alleges that each programmer defendant, by virtue of the particular channels that it controls, possesses market power in the market for "multichannel video programming services licensed and/or sold through multichannel video programming distributors." (See SAC ¶¶ 39, 43). The programmer defendants are alleged to have foreclosed independent channels from wide distribution because the programmer defendants use their market power to force distributors to take all of the channels that the programmer defendants own. (See id. ¶¶ 43-44.) Further, the programmer defendants are alleged to use their market power to prevent the distributors from experimenting with less bundled forms of channel distribution that would better meet consumer preferences. (See id. ¶ 45-46.)

  Notably, many of the allegations of conspiracy between the programmer and distributor defendants have been removed in the SAC. The SAC exclusively refers to programmer market power and repeatedly makes reference to programmer use of that market power – which gives them "extraordinary leverage" with the distributors (see id. ¶ 43) – to force distributors, including the distributor defendants, to carry certain channels and distribute them in certain ways. The SAC alleges that many distributors would rather purchase and distribute channels in a different way and explicitly asserts that "[t]he reason these distributors are forced into accepting bundled tiers that limit their ability to engage in legitimate competition for consumers based upon custom channel offerings is because the programmers [sic] defendants' market power . . . prevents distributors from rejecting the demands of the programmer defendants." (SAC ¶ 46.)

  On April 22, 2008, both the programmer and distributor defendants filed motions to dismiss the SAC. On May 20, 2008, plaintiffs filed an opposition memorandum

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6101 CAS (VBKx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | BRANTLEY et al. v. NBC UNIVERSAL, INC., et al. | | |

responding to both motions to dismiss. On June 6, 2008, the programmer defendants and distributor defendants filed separate reply memoranda. The Court heard oral argument on June 16, 2008 and took the matter under submission. Later that day, plaintiffs submitted a supplemental brief to which defendants filed a written response on June 17, 2008. Having carefully considered the arguments of the parties, the Court concludes as follows.

II.     **LEGAL STANDARD**

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6101 CAS (VBKx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | BRANTLEY et al. v. NBC UNIVERSAL, INC., et al. | | |

freely granted.  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.   DISCUSSION

The programmer defendants and distributor defendants have focused their challenges to the SAC on two main points – that the SAC still lacks adequate allegations of injury to competition and that the SAC has removed key allegations that allowed the Court to find that the FAC adequately alleged plaintiffs' status as purchasers entitled to bring suit under Illinois Brick v. Illinois, 431 U.S. 720 (1977).

### A.   Pleading of Injury to Competition

"Whether specific conduct is anticompetitive is a question of law."  Smilecare Dental Group v. Delta Dental Plan of California, Inc., 88 F.3d 780, 783 (9th Cir. 1996).  "Dismissal for failure to state a claim is appropriate where 'the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose.'"  Id. (quoting Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 735 (9th Cir. 1987)).

Unlike in the FAC, in the SAC plaintiffs allege that each of the programmer defendants maintains market power by virtue of its ownership of key broadcast networks or cable channels. (See SAC ¶ 43.)  And unlike in the FAC, the SAC includes allegations of competitor exclusion caused by the allegedly anticompetitive behavior.  (See id. ¶ 44.) These allegations, unlike the complaints made against bundling of channels in the FAC, allege a basis for determining that there is a bona fide reduction of competition rather than a mere dissatisfaction by consumers with the choices that a well-functioning free market has provided.

The defendants' responses to these allegations are not persuasive at the motion to dismiss stage.  The defendants largely criticize the allegations that each programmer defendant has market power or that there have actually been cable channels excluded by the bundling practices of the programmer defendants.  While these arguments may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6101 CAS (VBKx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | BRANTLEY et al. v. NBC UNIVERSAL, INC., et al. | | |

eventually prove to be true, they require a submission of evidence. The SAC alleges that each programmer defendant owns at least one channel that is "deemed by the industry as absolutely necessary" to the distributors and due to this possesses market power that allows them to dictate terms to the distributors. (SAC ¶ 43.) Further, despite an express allegation of foreclosure of independent channels due to defendants' actions, (see id. ¶ 44), defendants urge that dismissal is appropriate based on questions of whether programmers or channels are being foreclosed and whether any foreclosure has a competitive effect – conclusions that can only be made after a consideration of evidence.

Defendants also claim that the SAC, on its face, contradicts any findings of market power on the part of defendants because the SAC, as pleaded, demonstrates that defendants do not control enough cable/satellite channels to possess market power. This argument fails for two reasons. First, there is no reason to think that, as a matter of law, market share in this market should be calculated based on the raw number of channels owned without taking into account any number of other possible market share criteria such as ratings and revenue. Second, market share is circumstantial proof of market power. See Forsyth v. Humana, Inc., 114 F.3d 1467, 1475-76 (9th Cir. 1997). If plaintiffs can directly prove market power and anticompetitive effects, there is no need for the indirect proof provided by market share. Id.

Defendants also criticize the market definition pleaded in the SAC. The product market definition, which, in so many words, encompasses cable/satellite programming sold to consumers is adequate at this stage given the theory of harm that the plaintiffs present.[2] While defendants' critique of the geographic market may eventually create problems for a nationwide class and a nationwide geographic market may be untenable as a factual matter, the complaint alleges a nationwide geographic market as the restraints described in the complaint are described to operate on a nationwide basis – i.e., the programmers have the same policies on bundled distribution everywhere regardless of local conditions.

As the SAC stands, it alleges that the programmer defendants have market power

---

[2] That the restrained market is upstream from the consumer plaintiffs may make standing more difficult to establish, but it does not, in and of itself, render the product market definition insufficient.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6101 CAS (VBKx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | BRANTLEY et al. v. NBC UNIVERSAL, INC., et al. | | |

and why they have it, (SAC ¶ 43), and it alleges exclusion of competing cable channels and the general mechanism by which those channels are excluded, (id. ¶ 44). This is all that is required at the Rule 12(b)(6) stage. As such, defendants' motion is denied to the extent that it is premised on a failure to plead injury to competition.

### B. Antitrust Standing

The Court previously found that plaintiffs had properly pleaded antitrust standing in the FAC. (See March 10, 2008 Minute Order at 7-11.) However, in the SAC the plaintiffs have omitted many of the key allegations from the FAC relevant to the conspiracy exception to Illinois Brick. Even so, the Court finds that the SAC, in combination with the clarification of the SAC's allegations made in plaintiffs' opposition brief and at oral argument, are sufficient to allow the case to proceed.

#### 1. The Application of Illinois Brick

Indirect purchasers – i.e., individuals purchasing a product at a point in the supply chain removed from the antitrust violation – generally have no entitlement to sue under Section 4 of the Clayton Act. See Illinois Brick, 431 U.S. at 728-29.[3] However, there is an exception to Illinois Brick for conspiracies between the wholesaler and retailer at the expense of the end consumer. See State of Ariz. v. Shamrock Foods Co., 729 F.2d 1208, 1211-13 (9th Cir. 1984) (conspiracy between wholesale dairy and retail grocery stores to fix retail price not barred by Illinois Brick). But, as Supreme Court and recent Ninth Circuit precedent illustrates, existing exceptions to Illinois Brick are to be narrowly interpreted and new exceptions are disfavored. See Kansas v. Utilicorp United Inc., 497 U.S. 199, 216-17 (1990); Delaware Valley Surgical Supply Inc. v. Johnson & Johnson, 523 F.3d 1116, 1123-24 (9th Cir. 2008); see also Kendall v. Visa U.S.A., Inc., 518 F.3d 1042 (9th Cir. 2008) (conclusory allegation of conspiracy not sufficient to invoke conspiracy exception to Illinois Brick where no facts to support conspiracy were alleged).

Based on the allegations in the FAC, plaintiffs had alleged enough of a conspiracy to qualify for the co-conspirator exception by claiming that the programmers and

---

[3] Antitrust standing and whether a plaintiff has a proper claim under Illinois Brick are analytically distinct issues. See Illinois Brick, 431 U.S. at 728 n.7.


UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6101 CAS (VBKx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | BRANTLEY et al. v. NBC UNIVERSAL, INC., et al. | | |

distributors entered into a series of vertical agreements that enabled them to reap anticompetitive profits at the expense of consumers. Importantly, the FAC included allegations of a motive and intent on the part of the distributors to conspire to limit competition. (See FAC ¶¶ 4-5.) The alleged conspiracy was claimed to have been formed to reduce competition at the wholesale and retail level and extract supracompetitive profits from consumers to the benefit of both the programmers and the distributors. As alleged in the FAC, the antitrust harm fell on the consumer plaintiffs because the distributors, as alleged willing participants in the scheme, imposed charges for unwanted programming on consumers.

The plaintiffs have left out of the SAC many of the key allegations regarding the distributors' motive, intent, and actions taken to join any conspiracy with the programmers. However, plaintiffs do continue to allege – and argued strenuously in their opposition brief and at oral argument – that the distributors are part of a conspiracy, even if their participation is coerced, and that the distributors acquiesce to and benefit from the conspiracy at the expense of consumers.[4]

Defendants again argue that the conspiracy exception to <u>Illinois Brick</u> arose in the price-fixing/retail price maintenance context and that the exception should be limited to those cases. While it is true that most of the conspiracy cases have involved price fixing or retail price maintenance, the Court is not convinced that there should be a categorical bar to other kinds of conspiracies. For instance, in this case plaintiffs allege a relationship not entirely unlike retail price maintenance, only with non-price factors: plaintiffs complain that the programmers require non-price restraints – <u>e.g.</u>, limits in the way in which channels can be purchased – to be placed on consumers by the distributors as a condition of selling the programmers' products.

While there is definite tension between the plaintiffs' allegations of coercion and their allegations of conspiracy, further factual development is necessary to resolve the issues presented, especially given the clarification of the SAC made in plaintiffs' opposition brief and at oral argument regarding the existence and nature of the

---

[4] While he hesitated to make a definitive statement on the matter, at oral argument plaintiffs' counsel suggested that some of the conspiracy allegations present in the FAC may have been unnecessarily omitted from the SAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6101 CAS (VBKx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | BRANTLEY et al. v. NBC UNIVERSAL, INC., et al. | | |

conspiracy.[5]

/ / /

### 2. Associated General Contractors Factors

In Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519 (1983), the Supreme Court outlined a five factor test for determination of standing in antitrust cases: (1) whether the harm is of the type the antitrust laws were intended to redress, (2) directness of injury, (3) whether the measure of harm is speculative, (4) risk of duplicative recovery, and (5) complexity in damage apportionment. See id. at 537-46.

For the reasons discussed in part III.A of this order and in the Court's prior order dismissing the FAC, plaintiffs have adequately alleged harm that the antitrust laws were intended to redress. Directness of injury and risk of duplicative recovery weigh against standing because plaintiffs are technically indirect purchasers, but this is mitigated by the same allegations of conspiracy that allow plaintiffs to survive the Illinois Brick indirect purchaser bar. For the same reasons given in the order dismissing the FAC, the Court does not find defendants' arguments on speculative harm and damage complexity persuasive at a motion to dismiss stage.

While further factual development may demonstrate that the plaintiffs are not proper parties with standing to challenge the conduct in the complaint – particularly if it becomes apparent that the distributors are in a better position to challenge the conduct

---

[5] Both parties press the issue of the own or control exception to Illinois Brick. See Illinois Brick, 431 U.S. at 736 n.16. Neither side is persuasive. Contrary to the defendants' arguments, the Court can see situations where the own or control exception could be applied more broadly than in the context of a parent/subsidiary relationship, such as in an agency context. See In re Mercedes-Benz Anti-Trust Litigation, 157 F.Supp. 2d 355, 366 (D.N.J. 2001). But plaintiffs' arguments fail as well as they have not alleged an agency relationship and neither a simple contractual relationship, see Delaware Valley, 523 F.3d at 1122-24, or unopposable upstream power, see In re Microsoft Corp. Antitrust Litigation, 127 F.Supp. 2d 702, 713 (D. Md. 2001), is enough to invoke the own or control exception.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-6101 CAS (VBKx) | Date | June 25, 2008 |
|---|---|---|---|
| Title | BRANTLEY et al. v. NBC UNIVERSAL, INC., et al. | | |

described in the complaint – the Court finds that dismissal for lack of standing is inappropriate at this early juncture.

## IV.  CONCLUSION

For the reasons given above, the Court DENIES the motions to dismiss.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |