O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROB BRANTLEY, et al., ) | Case No.  CV 07-6101 CAS (VBKx) |
| ) Plaintiff(s), ) | |
| vs. ) ) | ORDER RE: (1) PLAINTIFFS' MOTION TO ADJUDICATE THAT FORECLOSURE IS NOT AN ELEMENT OF PLAINTIFFS' ANTITRUST INJURY; AND (2) DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT |
| NBC UNIVERSAL, INC., et al., ) ) ) | |
| ) Defendant(s). ) ) | |
| _____ ) | |

## I.    INTRODUCTION

Plaintiffs are consumers of television programming.  They have brought an antitrust suit against several owners of television channels that are distributed through cable and satellite systems ("programmer defendants") as well as against several owners of cable and satellite systems ("distributor defendants").[1]  Plaintiffs voluntarily

---

[1] The programmer defendants are NBC Universal, Inc., Viacom, Inc., The Walt Disney Company, Fox Entertainment Group, Inc., and Turner Broadcasting Systems, Inc.
(continued...)

H:\CASNYDER\Civil\E-Filings\CV07-6101Order06.wpd

amended their original complaint, filing a first amended complaint ("FAC") on December 3, 2007.  The FAC alleged that the programmer and distributor defendants conspired to effectuate a scheme whereby "the collective conduct of defendants . . . eliminated, in material part, competition among and between (1) the content providers and/or programmers for cable/satellite television distribution and (2) the cable and satellite providers by the practice of offering only prepackaged tiers of bundled programs and refusing to offer cable programming to consumers on an 'a la carte' basis."  FAC ¶ 1.  Plaintiffs alleged that "[i]n part to avoid competing with each other and in part to extract premium prices, the programmer defendants, knowing that each operates in the same fashion, only offer to sell and/or license programming to cable and satellite providers on a "bundled" basis.  In turn, the cable and satellite providers, to avoid competitive pressures and to maximize revenues and profits, offer to consumers only prepackaged bundled tiers and have refused to offer cable and satellite channels to consumers on an 'a la carte' or individual choice basis."  Id. ¶ 4.

On March 10, 2008, the Court granted the programmer and distributor defendants' motions to dismiss, finding that the plaintiffs had adequately alleged standing but had not adequately alleged injury to competition.  Significant to the Court's ruling were the absence of allegations of market power and the absence of any allegations of competitive injury other than the "forced" purchase of bundled programming when consumers would rather purchase channels on an "a la carte" basis.

On March 20, 2008, plaintiffs filed their second amended complaint ("SAC"), substantially altering the allegations in the FAC.  The SAC alleged that each programmer defendant, by virtue of the particular channels it controls, possesses market

---

[1](...continued)
(substituted for original defendant Time Warner, Inc.). The distributor defendants are Time Warner Cable, Inc., Comcast Corporation, Coxcom, Inc., The DirecTV Group, Inc., Echostar Satellite L.L.C., Charter Communications, Inc., and Cablevision Systems Corporation.

power in the market for "multichannel video programming services licensed and/or sold through multichannel video programming distributors." SAC ¶¶ 39, 43. The SAC further alleged that programmer defendants used their market power to foreclose independent channels from wide distribution as well as to prevent distributors from experimenting with less bundled forms of channel distribution. Id. ¶¶ 43-46.

On June 25, 2008, the Court denied the programmer and distributor defendants' motions to dismiss, finding that plaintiffs had adequately pled both injury to competition and standing in order to survive a motion to dismiss. The Court concluded that plaintiffs had adequately pled antitrust injury because, unlike the FAC, the SAC included allegations (1) that each of the programmer defendants maintains market power by virtue of its ownership of key broadcast networks or cable channels and (2) of competitor exclusion caused by the allegedly anticompetitive behavior. June 25, 2008 Order at 4. The Court held that "[t]hese allegations unlike the complaints made against bundling of channels in the FAC, allege a basis for determining that there is a bona fide reduction of competition rather than a mere dissatisfaction by consumers with the choices that a well-functioning free market has provided." Id.

On May 1, 2009, plaintiffs filed a motion to adjudicate that foreclosure is not an element of their antitrust injury. On May 4, 2009, plaintiffs filed a third amended complaint ("TAC") pursuant to a stipulation between the parties, deleting substantially all allegations that foreclosure of independent programmers resulted in an injury to competition that caused them to suffer antitrust injury.[2] On June 12, 2009, the programmer and distributor defendants filed the instant motion to dismiss and opposition to plaintiffs' motion to adjudicate that foreclosure is not an element of

---

[2] The TAC alleges a single claim for violation of section 1 of the Sherman Act, 15 U.S.C. § 1. TAC ¶¶ 46-51.

plaintiffs' claim.[3] On June 25, 2009, plaintiffs filed their opposition to defendants' motion to dismiss. Also on June 25, 2009, plaintiffs filed a memorandum in support of their motion to adjudicate that foreclosure is not an element of their claim. On July 6, 2009, defendants filed a reply in support of their motion to dismiss and a surreply in opposition to plaintiff's motion to adjudicate that foreclosure is not an element of plaintiffs' claim. The Court heard oral argument on July 16, 2009, and thereafter took these motions under submission.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombley, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id. The Ninth Circuit, citing Twombley, recently observed that "[t]o successfully state a claim under § 1 of the Sherman Act, a plaintiff need only meet the notice pleading standard articulated in Fed. R. Civ. P. 8(a)(2)." William O. Gilley Enter., Inc. v. Atl. Richfield Co., 561 F.3d 1004, 1009 (9th Cir. 2009). The Ninth Circuit further noted that Twombley held that "'[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

---

[3] The programmer defendants note that the distributor defendants have a filed a motion to dismiss the TAC on the ground that plaintiffs, as indirect purchasers of television programming, cannot under the Supreme Court's decision in Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), challenge the lawfulness of the agreements made between programmers and distributors. The programmer defendants argue in a motion joined in by the distributor defendants, that, although the injury to competition issue is generally regarded as antecedent to the Illinois Brick issue, should the Court grant the indirect purchaser motion, the TAC should be dismissed as to all defendants because the programmer defendants are only indirect suppliers to plaintiffs. Mot. at 3.

improbable, and that a recovery is very remote and unlikely.'" Id. (citing Twombley, 550 U.S. at 555) (internal quotations omitted). Finally, the Ninth Circuit noted that "dismissals for failure to state a claim are disfavored in antitrust actions." Id. (citations omitted).

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

The question presented by this motion is whether the plaintiffs have stated a claim for violation of section 1 of the Sherman Act based on the implementation of multiple television channel bundling arrangements which have allegedly deprived consumers of the ability to choose to purchase fewer channels on an unbundled or *a la carte* basis. It is alleged that these vertical agreements, which are imposed by the programmers on cable, satellite, and telecommunication distributors, have impeded competition between these distributors and harmed consumer welfare by denying consumers the right to exercise such choices and by enabling the defendants to charge end user consumers inflated prices because they are required to purchase channels they do not wish to watch. TAC ¶ 1.

Plaintiffs seek a ruling that pleading and proof of foreclosure of independent programmers is not required to establish antitrust injury in this case because "the foreclosure of independent programming is not causally related" to the injury alleged by plaintiffs, namely, deprivation and overcharge.[4] Mot. at 1. Plaintiffs contend that proof

---

[4] Plaintiffs define overcharge as "the equivalent of a net loss of consumer welfare" measured in terms of "the additional amount consumers, in the aggregate, pay for the networks they want to watch as compared to what they would pay if separate pricing (a la carte offerings) were available . . . . Stated differently, in the 'but-for' world of free choice of networks, consumers in the aggregate would pay less than they do now for cable . . . and that difference is both the net consumer welfare loss and the measure of class damages."
(continued...)

of foreclosure would only be necessary to establish a claim brought by an excluded competitor. Id. Plaintiffs further contend that recent decisions by the Ninth and Second Circuits "have made abundantly clear that deprivation of choice coupled with a net consumer welfare loss constitute 'antitrust injury.'"[5] Id. at 2.

Plaintiffs further argue that the bundled sale of channels results in "effective price discrimination." Plaintiffs contend that defendants charge different consumers different amounts for channels they want by requiring them to purchase additional channels upon which they place less or no value. Id. Plaintiffs rely on the observation

---

(...continued)
Mot. at 1 n.1.

[5] In support of this argument, plaintiffs rely on three cases: Theme Promotions, Inc. v. News Am. Mktg. FSI, 546 F.3d 991 (9th Cir. 2008); Ross v. Bank of Am., 524 F.3d 217 (2d Cir. 2008); and TYR Sport Inc. v. Warnaco Swimwear, Inc., No. 08-529, 2009 WL 1769444 (C.D. Cal. May 27, 2009). These cases do not support plaintiffs' argument. In Theme, the plaintiff presented evidence of foreclosure of competition. There, the Ninth Circuit affirmed the verdict in favor of the plaintiff on its Cartwright Act claims where the trial court had instructed the jury that in order to succeed on that claim, the plaintiff had to prove that the right of first refusal agreements at issue in that case "foreclosed competition in a substantial share of the market." Id. at 1002-1003. It was in that context, where substantial evidence supported the jury's finding to that effect, that the Ninth Circuit held that reduction of choice and higher prices constituted antitrust injury because that injury was the direct result of the antitrust violation. Id. at 1004-1005. In Ross, the plaintiffs alleged that a horizontal agreement to require credit cardholders to arbitrate their claims caused direct injury to the plaintiffs by causing them to pay more for services provided by them to the defendants. The Second Circuit reversed the dismissal of plaintiffs' claim, holding that the plaintiffs had adequately alleged injury in fact sufficient to establish standing under Article III of the U.S. Constitution. It was in this context that the Second Circuit held that "reduced choice and diminished quality in credit services" that resulted directly from its bank's "illegal collusion to constrict the options available to cardholders" were sufficient to show Article III injury in fact. Ross, 524 F.3d at 223. In so doing, the Second Circuit rejected the argument that unless and until the arbitration clauses were invoked by the defendants, that any harm was too speculative to satisfy constitutional standing requirements. Ross thus involved horizontal collusion, and the Second Circuit specifically did "not address the question of whether the cardholders' alleged injuries would survive antitrust standing analysis." 524 F.3d at 223, 225. In TYR Sport Inc. the court viewed plaintiff's claims as alleging a horizontal agreement to exclude competitors.

that "bundling by a firm with market power generally harms consumer welfare even without substantial foreclosure."  Id. at 8-9 (citing Einer R. Elhauge, Tying, Bundled Discounts, and the Death of the Single Monopoly Profit Theory, 123 Harv. L. Rev. (forthcoming Dec. 2009), Harvard Olin Center Working Paper 629 (April 10, 2009) at 1-24, available at http://ssrn.com/abstract=1345239).  Plaintiffs argue that defendants harm consumer welfare by expropriating consumer surplus[6] "by price discriminating across two products for which demand is not strongly positively correlated."[7]  Id. at 9. Plaintiffs further argue that such bundling "will *always* reduce consumer welfare if buyer preferences are normally distributed and demand is not perfectly positively correlated."  Id. at 10 (emphasis in original).

Plaintiffs argue that in United States v. Loew's, Inc., 371 U.S. 38 (1962), the Supreme Court held that an industry-wide practice of bundled leasing of entertainment programming which resulted in effective price discrimination violated section 1 of the Sherman Act.  Id. (citing George J. Stigler, United States v. Loews, Inc.: A Note on Block Booking, 1963 Sup. Ct. Rev. 152, 153).  Plaintiffs further argue that, subsequent to Loew's, "the Court has recognized such effective discriminatory pricing as an

---

[6] Consumer surplus is defined in plaintiffs' motion as "the difference between what something is worth to consumers and the price they pay for it."  Mot. at 9.

[7] In his article, Professor Elhauge shows how tying and discounted product bundling contracts can operate to harm consumer welfare without proof of substantial foreclosure share or effect.  One way this may be accomplished is by enabling a supplier with market power to profitably engage in price discrimination across buyers of the products in question.  Plaintiffs provide the following hypothetical to illustrate this point: "Imagine a group of 200,000 consumers whose reservation prices for ESPN and Lifetime range from $0 to $20 per month, but have negatively correlated demand such that the combined reservation price for ESPN plus Lifetime is $20 per buyer.  (In other words, a buyer who values ESPN at $5 values Lifetime at $15, one who values ESPN at $20 values Lifetime at $0, etc.).  A firm that unbundled the pricing of the channels would maximize profits at a price of $10 per channel.  In this scenario, buyers would enjoy a total consumer surplus of $1 million whereas, with bundled pricing (charging $20 for both ESPN and Lifetime), consumer surplus is $0."  Mot. at 9.

anticompetitive concern in tying or bundling arrangements." Id. at 11(citing Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 14-15 (1984) (Bundling or tying "can increase the social costs of market power by facilitating price discrimination, thereby increasing monopoly profits over what they would be absent the tie.")).

Defendants respond that plaintiffs' motion is, "in effect, a motion for reconsideration of the Court's prior decisions requiring them to plead foreclosure to competitors." Opp'n at 3. Defendants argue that plaintiffs have confused two distinct elements of a private antitrust claim: (1) harm to the competitive process needed to establish an antitrust violation, and (2) a cognizable injury suffered by plaintiff as a result of the violation sufficient to establish antitrust standing. Opp'n at 2-3; (citing e.g. E & L Consulting, Ltd. v. Doman Indus. Ltd., 472 F.3d 23, 28 n. 3 (2nd Cir. 2006) ("[T]he failure to allege harm to competition is analytically distinct from failure to plead antitrust injury . . . .")). Defendants argue that "deprivation of consumer choice can[not] satisfy a plaintiff's burden to plead and prove the separate element of *injury to competition*." Id. at 3 (emphasis in original). Defendants further argue that antitrust law protects consumers from harm only where there is injury to the competitive process. Id. at 4. Defendants argue that, because plaintiffs' TAC fails to allege injury to the competitive process, and because plaintiffs have affirmatively disclaimed an effort to prove antitrust injury flowing from the foreclosure of competitors, it should be dismissed with prejudice. Id.

Defendants further respond that, though certain types of agreements such as horizontal price-fixing are presumed to injure competition, vertical agreements such as those challenged by plaintiffs' TAC "are assessed under the rule of reason and require the plaintiff to prove actual harm to the competitive process." Opp'n at 4 (citing Alliance Shippers, Inc. v. S. Pac. Transp. Co., 858 F.2d 567, 570 (9th Cir. 1988) ("An essential element of a Section 1 violation under the rule of reason is injury to competition in the relevant market.")). Defendants further argue that antitrust law only protects consumers against injuries that flow from injury to the competitive process. Id.

at 5, (citing e.g. Rebel Oil Co., Inc. v. Atl. Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995) ("[I]t is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition."). Defendants contend that the competitive process is injured through (1) horizontal agreements among competitors that directly eliminate or reduce competition or (2) conduct that partially or completely excludes rivals from the market. Id. at 5-6, (citing, e.g., United States v. Trenton Potteries Co., 273 U.S. 392 (1927); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 465, 477 (1992)). Defendants contend that, because the TAC alleges neither foreclosure of competitors nor any horizontal agreement among defendants, it fails to state a claim for relief. Id. at 6.

Defendants further argue that companies routinely enter into vertical agreements with distributors that limit the mode of distribution, for example, by restricting distribution geographically, and that the resulting restrictions on consumer choice are not unlawful. Id. at 7 (citing VIII Philip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1609a, at 114 (2d ed. 2002) ("[T]he antitrust laws have not condemned manufacturer-dealer agreements mandating a dealer's location, the nature or design of its premises, minimum hours of business, repairs, warranties, or quality control, maintenance of warehousing facilities or showrooms, a certain level of inventories, a certain mixture of goods and services, advertising, or other product promotion.")). Defendants further argue that the Supreme Court and lower courts have explicitly rejected plaintiffs' argument that such vertical restrictions constitute injury to competition solely because they give consumers fewer choices or require consumers to pay higher prices. Id. at 8 (citing Cont'l T.V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 57-58 (1977) (holding that agreement between manufacturer and retailer restricting sales to particular retailer locations was not per se invalid); E & L Consulting, Ltd. v. Doman Indus. Ltd., 472 F. 3d at 30 (2d Cir. 2006) (affirming dismissal of a complaint challenging vertical restrictions on the grounds that an allegation of diminished consumer choice and inflated prices "by itself, is not a sufficient allegation of harm to

competition").

Additionally, defendants argue that courts have permitted manufacturers to "impose restraints on the 'competitive style' of an independent retailer." Id. (citing Kestenbaum v. Falstaff Brewing Corp., 575 F.2d 564, 571 (5th Cir. 1978) (rejecting plaintiff distributor's argument that "increased prices and reduced output" as a result of defendant's advertising and warehouse location requirements constituted injury to competition)). Defendants contend that, even in the context of vertical price fixing, the Supreme Court has held that vertical agreements that prohibit retail price reductions are not unlawful in and of themselves "absent a further showing of anticompetitive conduct." Id. (citing Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877 (2007)).

Finally, defendants argue that plaintiffs' contention that section 1 of the Sherman Act prohibits vertical agreements involving firms with market power whenever they reduce consumer choice or disadvantage some consumers conflicts with a core antitrust principle: "As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing . . . ." Id. at 9 (citing Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc., 129 S. Ct. 1109, 1118 (2009)). Accordingly, defendants argue that businesses are permitted to enter into restrictive vertical agreements with distributors as long as those agreements do not injure the competitive process through horizontal agreements or the exclusion of rivals. Id.

Plaintiffs respond that they have alleged direct anticompetitive effects flowing from the challenged agreements. Reply at 2 (citing TAC ¶¶ 3-4). Plaintiffs argue that they allege the existence of a "series of written contractual restraints" that result in "little or no competition among programmers because each defendant programmer has – and exercises – the market power to force each distributor to take a full line of broadcast and cable channels and to prohibit each distributor from reselling to consumers on an unbundled basis." TAC ¶ 4. Plaintiffs contend that defendants employ the "coercive power of 'must have'" channels to prohibit independent

distributors from offering a la carte or more tightly bundled offerings that would allow them to attract more business from consumers. Reply at 8. Plaintiffs contend that this is a restraint on trade that results in injury to the competitive process, which is sufficient to establish a violation of the Sherman Act. Id. at 8-9 (citing Republic Tobacco v. N. Atl. Trading, 381 F.3d 717, 737 (7th Cir. 2004) ("It may be that, in a proper case alleging vertical restraints, a direct anticompetitive effects analysis could be used to show market power."). Plaintiff further contends that the vertical restraint cases that defendants rely on did not involve the "pervasive, market-wide effects" at issue here. Id. at 10.

Plaintiffs further respond that this case has "both horizontal and vertical dimensions." Reply at 10. Plaintiffs argue that "[i]n the aggregate, programmers' uniform practices of forced bundling are an exercise of vertical power over distributors producing horizontal effects comparable to those which would flow from a horizontal agreement." Id. at 10-11 (citing Loew's, 371 U.S. 38 (1962); United States v. Gen. Motors Corp., 384 U.S. 127, 144-45 (1966)).

Plaintiffs further argue that a substantial foreclosure share is not required in tying cases. Reply at 11. Plaintiffs contend that they are only required to show that consumers might have chosen a rival product absent the restraint on free competition. Id. at 11-12 (citing Jefferson Parish, 466 U.S. at 12; Ill. Tool Works, Inc. v. Indep. Ink, Inc., 547 U.S. 28, 42-43 (2006)). Plaintiffs further contend that foreclosure exists here in the form of (1) distributors being foreclosed from offering consumers anything but the required bundled packages and (2) consumers being foreclosed from purchasing cable television unrestrained by defendants' "tiering restrictions." Reply at 17.

Defendants respond that plaintiffs have not cited a single case holding that the Sherman Act was violated absent a horizontal agreement or the exclusion of an actual or potential competitor. Surreply at 2. Defendants further argue that "[a]fter having stipulated that foreclosure is not part of their case and deleting from the TAC all allegations that rivals were excluded or foreclosed, Plaintiffs now argue that the TAC

nonetheless alleges a type of 'foreclosure.'" Id. at 4. Defendants contend that the TAC alleges the kind of restriction on commercial freedom that every vertical restraint imposes, rather than the exclusion or foreclosure of third parties. Id. Defendants further contend that the agreements at issue do not preclude competition among distributors, who compete in "countless ways, including offering numerous programming channels not subject to the challenged agreements, lower prices, superior service, and innovative technologies and features." Surreply at 5 n. 4.

Defendants further respond that bundling and tying violate the Sherman Act only when they foreclose or exclude competitors from the market. Surreply at 6 (citing Loew's, 371 U.S. at 44-45 (holding that tying agreements "are an object of antitrust concern for two reasons—they may force buyers into giving up the purchase of substitutes for the tied product, and they may destroy the free access of competing suppliers of the tied product to the consuming market."); Jefferson Parish, 466 U.S. at 16 ("[W]hen a purchaser is 'forced' to buy a product he would not have otherwise bought even from another seller in the tied product market, there can be no adverse impact on competition because no portion of the market which would otherwise have been available to other sellers has been foreclosed.")). Defendants note that plaintiffs have not cited any cases holding that bundling or tying may be condemned based on price discrimination alone without proof of foreclosure.[8] Id. at 8. Moreover,

---

[8] Defendants acknowledge that in some circumstances tying is per se illegal, Surreply at 8 & n.7, but only in circumstances where the tie may foreclose some amount of competition in the tied product market. Id. (citing Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 533 (3d Cir. 1998) ("Federal antitrust law is directed at protecting competition rather than individual competitors, and outlaws only those tying/reciprocal dealing arrangements that substantially foreclose competition in the tied product market. The market power requirement of the per se antitrust jurisprudence serves this goal since it is presumed that where the defendant exercises appreciable market power in the tying product market it can leverage that power to substantially foreclose competition in the tied product market.")). Defendants further argue that plaintiffs have expressly stated that they are not asserting any per se claims in this case. Id. (citing Reply (continued...)

defendants contend that the Supreme Court has rejected plaintiffs' argument that a showing of price discrimination is reason enough to condemn tying. Surreply at 9 (citing Ill. Tool Works, 547 U.S. at 45). Defendants further contend that plaintiffs' discussion of price discrimination is "academic" because the TAC only mentions price discrimination in passing and does not allege that defendants charge different prices to different consumers. Id. at 10 (citing TAC ¶ 48).

Lastly, defendants argue that plaintiffs have at most alleged an injury in fact, but not antitrust injury. Surreply at 12. Defendants contend that the elements of antitrust injury are (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent. Id. (citing Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1008 (9th Cir. 2003)). Defendants argue that plaintiffs' allegations fail to satisfy the requirement that their injury flows from "unlawful conduct." Id. at 12-13. Defendants contend that "consumer harm that does not flow from injury to competition is not actionable, no matter how widespread." Id. at 16.

In its March 10, 2008 Order, the Court noted that "[t]he cases cited by plaintiffs all include more than a mere lack of certain allegedly desirable consumer choices. They either involve bundling or tying of products by a firm that leads to exclusion of competitors . . . or they involve horizontal arrangements by which competitors subvert the normal competitive process to reduce choice . . . . . " March 10, 2008 Order at 7. The Court concluded that "[t]he FAC pleads neither a horizontal agreement nor exclusion of competitors. The FAC must plead some basis for distinguishing alleged anticompetitive conduct from normal competitive conduct." Id. In its June 25, 2008 Order, the Court concluded that "unlike in the FAC, the SAC includes allegations of competitor exclusion caused by the allegedly anticompetitive behavior . . . . These

---

[8](...continued)
at 16 ("Rather than challenging the Defendants' conduct as a per se illegal tie, Plaintiffs here challenge the series of vertical agreements between programmers and distributors, which have horizontal effects, under the rule of reason.")).

allegations, unlike the complaints made against bundling of channels in the FAC, allege a basis for determining that there is a bona fide reduction of competition rather than a mere dissatisfaction by consumers with the choices that a well-functioning free market has provided."

"Whether specific conduct is anticompetitive is a question of law." Smilecare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996). "Dismissal for failure to state a claim is appropriate where 'the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose.'" Id. (quoting Rutman Wine Co. v. E. & J. Gallo Winery, 829 F.2d 729, 735 (9th Cir. 1987)).

Similarly, any claim of tying or bundling requires foreclosure of actual or potential competition. Ill. Tool Works, 547 U.S. at 34 ("[F]our different rules of law have supported challenges to tying arrangements. . . . In all of those instances, the justification for the challenge rested on either an assumption or a showing that the defendant's position of power in the market for the tying product was being used to restrain competition in the market for the tied product.").

The bundling agreements at issue are unquestionably vertical agreements between the programmers and their distributors. Plaintiffs do not seek to allege that any actual or potential competitors have been foreclosed from the tied product market. It is not sufficient to allege that a desirable version of a product is excluded from the market. Although commentators have recognized that a distribution restraint, if emulated widely, can have an anticompetitive effect, it appears that the harm envisioned in these circumstances is the resultant impact on competition in the sense that "[a]lthough the device is of no competitive advantage when all rivals are using it, none can risk a unilateral move to abandon it." Id. at 346; see Sullivan & Grimes, The Law of Antitrust, §6.3 at 345-346; §7.3 at 390-391 (2d ed. 2006) (citing Scherer, The Economics of Vertical Restraints, 52 Antitrust L. J. 687, 702-04 (1983)). Here,

plaintiffs allege that the distributor defendants cannot risk deviating from the emulated bundling practice, and that this alone should suffice to allege a claim for relief.

The Ninth Circuit has recently held that in a per se tying case where there is "zero foreclosure" of competition in the market for the tied product, there can be no unlawful tying arrangement. Blough v. Holland Realty, Inc., 574 F.3d 1084, 1090 (9th Cir. 2009). A "zero foreclosure" effect exists where none of the plaintiffs or anyone else buying the tying product would have wanted to purchase the tied product from a third party competitor. In such a case, no third party competitor is foreclosed from the market for the tied product. For purposes of the present motion, based on the contention that a showing of foreclosure is not required, this case is the equivalent of a "zero foreclosure" case.

In Loew's, the Supreme Court appears to have condemned block booking arrangements because, among other effects, an independent seller wishing to offer alternative movies or programming to television stations would have difficulty penetrating the market unless they also offered the stations' popular programs for their prime time viewing hours. Smaller or independent producers would therefore likely face entry barriers resulting from pervasive block booking practices. This is the kind of foreclosure effect that plaintiffs here argue should not be an element of proof.

In this case, plaintiffs seek an adjudication that foreclosure is not an element of their claim. It appears to the Court that this assertion cannot find support in case law. The parties have agreed in their March 5, 2009 joint status report that the question of whether foreclosure is an element of plaintiffs' claim is a dispositive issue which is appropriate for immediate review by the Ninth Circuit. To that end, the parties have agreed that if plaintiffs' motion is denied and defendants' motion is granted, plaintiffs will dismiss this case and seek immediate review of this Court's decision, and that if plaintiffs' motion is granted and defendants' motion is denied, this case will be certified for interlocutory appeal. Accordingly, the Court grants the motion to dismiss the TAC with prejudice to permit plaintiffs to seek immediate review of this order.

## IV. CONCLUSION

In accordance with the foregoing, the Court concludes that foreclosure is an element of plaintiffs' antitrust injury, and therefore DENIES plaintiffs' motion to adjudicate that foreclosure is not an element of plaintiffs' antitrust injury and GRANTS defendants' motion to dismiss the TAC with prejudice.

IT IS SO ORDERED.

Dated: October 15, 2009

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE